IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

STEVE MINER,                          )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          Civil Action No. 3:07-cv-1260
                                      )
MONTGOMERY COUNTY, TENNESSEE,         )          Judge Thomas A. Wiseman, Jr.
                                      )
          Defendant.                  )

MEMORANDUM OPINION

Plaintiff Steve Miner initiated this action against Montgomery County in December 2007, asserting claims for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 – 634, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 – 1004. Now before the Court is defendant Montgomery County's motion for summary judgment (Doc. No. 14), in which the defendant asserts it is entitled to summary judgment in its favor as a matter of law.

For the reasons set forth below, the Court finds that the motion should be granted.

I.     FACTUAL BACKGROUND

The basic facts are undisputed.

Defendant Montgomery County, Tennessee is a municipal corporation, created and existing pursuant to the constitution and laws of the state of Tennessee. Montgomery County is an at-will employer.

Plaintiff Steve Miner was first employed by Montgomery County on September 15, 1992 to work in the Building and Codes Department. He held various positions in the Building and Codes Department during his tenure with the County, including that of building inspector, codes enforcement officer, and building official. In 1999, Miner became the Building Commissioner for Montgomery County. He was recommended for that position by the Building and Codes Committee of the Montgomery County Commission, approved for the position by then Mayor Doug Weiland, and his selection was ratified by the Montgomery County Commission. Miner understood that his employment was "at will," and he understood that term to mean he could be fired at any time, for any reason or no reason at all.

In August of 2006, Carolyn Bowers was elected Mayor of Montgomery County. She was sworn into office and began performing her duties as Chief Executive of Montgomery County on September 1, 2006. Immediately upon assuming the post of Mayor, Bowers began a review of all departments of the Montgomery County Government. According to Mayor Bowers, it was and is her philosophy that the departments of the County Government must serve the citizens of the County fairly, efficiently and courteously.

Prior to her election and during the early months of her tenure as Mayor, Bowers received at least five complaints regarding the operation of the Building and Codes Department by Steve Minor, some of them expressing dissatisfaction with Miner's handling of the job. Specifically, builder Bobby Wall complained to Mayor Bowers that Miner was rude, arrogant and unprofessional in handling his office. He advised Mayor Bowers that one at least one occasion, Miner had tried to require him to do more than was required by the building code for a specific construction job he was working on. Local developer Bobby Powers complained to Mayor Bowers that doing business with the Department was becoming more difficult because of Miner's management of the department. Builder Clay Powers complained to Mayor Bowers that he and his employees were experiencing inconsistent inspections and that there was a lack of uniform enforcement of building codes among the inspectors under Miner's management. Bowers also testified that after she took office she received other complaints "just as calls in the office," some of which were from the same individuals who had complained previously. (Bowers Dep. at 73:6–13.) These included "general complaints about the attitude in the office not changing and things not being evenly enforced throughout the community." (Bowers Dep. at 73:17–21.)

According to Bowers, after becoming mayor she "kind of handed" the situation over to Ed Davis, her Director of Administration, to "see what he could find out about" the complaints. (Bowers Dep. at 74:11–13.) Bowers first stated that Davis reported to her that at least some of the complaints were legitimate, including those made by Bobby Powers and Bobby Wall, but then was somewhat vague about whether Davis actually talked to those individuals. She indicated she believed the complaints because she did not think a builder of developer would "make up something" like that. (Bowers Dep. at 75:6–11.) Bowers also recalled that Davis confirmed a generally arrogant attitude in the department. (Bowers Dep. at 74:19–25.) She believed that Davis spoke with Rod Streeter, Building Official within the Building and

Codes Department and second in command within that department, under Miner. According to Bowers, Streeter purportedly told Davis that employees in Miner's office were afraid to speak about the situation there because they were afraid they would be fired, but that generally employees felt there was inconsistency in the area of codes enforcement; that there were days when Miner would "come in and wouldn't speak to anybody in the office, and that there was a lot of stress; that [Miner] was looking for another job and some of the other employees were trying to seek employment elsewhere." (Bowers Dep. at 75:12–76:18.)

When asked whether Mayor Bowers had asked him to investigate any of the complaints she had received about Miner, Ed Davis testified that she might have asked him in very general terms but that he had no specific recollection of the conversation, pointing out that it was the beginning of a new administration and a lot of other things were going on at the same time. (Davis Dep. at 37:3–13.) He stated that he in fact did not perform any investigation, but that he had a general idea of what the complaints about Miner were. (Davis Dep. at 37:12–25; 45:7–11.) He also recalled hearing, after Miner had been fired, hearing things said about inconsistency within his department and that things were better after he left. (Davis Dep. at 43:6–18.) There is no indication in the record as to whether Davis was asked in his deposition about whether he spoke with Rod Streeter.

In any event, Miner was fired, at Bowers' direction, on January 7, 2007. According to Bowers, she decided to terminate Miner's employment because of his (1) uneven enforcement of the codes; (2) arrogance to citizens who came into his office; and (3) general inefficiency in the department. (Bowers Dep. at 31:14–17.) Bowers testified that the predominant reason was her perception of his "arrogance or belligerence and not wanting to do what we had asked him to do." (Bowers Dep. at 81:23–82:2.) She elaborated on the general inefficiency as including his decision to close the office for lunch after she had specifically requested that it stay open, and her perception that it "seemed sometimes like some of his community service took priority over his job." (Bowers Dep. at 91:1–8.)

After Miner's termination, the open position of Building Commissioner was publicly posted for ten days. Rod Streeter, who had been second in command under Miner, applied for the job, along with at least two other people. The applicants were interviewed by a hiring committee made up of the Building and Codes Committee of the Montgomery County Commission, none of whose members played any part

in the decision to terminate Miner. The hiring committee selected Streeter as the most qualified applicant and recommended him to Mayor Bowers. Bowers agreed with the committee's recommendation, and her selection of Streeter for the position of Building Commissioner was ratified by the County Commission in March 2007. Streeter was in his mid-thirties at the time.

Miner exhausted his administrative remedies by filing a timely claim with the EEOC in March 2007, asserting that his discharge was prompted by illegal discrimination on the basis of age. After the EEOC issued a Notice of Right to Sue, Miner brought this action.

## II.       STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the " 'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247–49).

## III.      ANALYSIS AND DISCUSSION

The defendant first argues that Miner, as an appointee of the Mayor, did not fall within the ADEA's definition of "employee." Second, the defendant argues that Miner has no evidence to rebut the legitimate reasons for terminating Miner proffered by Montgomery County.

### A.       Whether Miner Was an "Employee" for Purposes of the ADEA

The ADEA makes it unlawful for any employer to discharge an employee because of that employee's age, 29 U.S.C. § 623(a)(1), provided that (1) the employee is at least 40 years old, 29 U.S.C. § 631(a); (2) the employer meets the jurisdictional requirements of 29 U.S.C. § 630(b); and (3) the employee is not an elected public official "or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office," unless that employee is subject to the applicable civil service laws of the state or governmental agency.  29 U.S.C. § 630(f).

The defendant here, without reference to any evidence in the record other than Miner's agreement in his deposition that he was "appointed" by Mayor Bowers' predecessor,[1] contends that Miner, as Building Commissioner, was in a "confidential, policymaking position" and therefore was an "appointee on the policymaking level" within the exception carved out by § 630(f).  The defendant has not pointed to any statute, ordinance or regulation defining the Building Commissioner's duties that indicate that the position is, in fact, one at the policymaking level, nor has the defendant pointed to any facts in the record in suggesting that the job as performed actually entails policymaking decisions.  The Court therefore finds, for purposes of the defendant's motion for summary judgment, that the defendant has not carried its burden under Rule 56 of establishing, based upon the factual record before the Court, that it is entitled to judgment on this issue as a matter of law.  Fed. R. Civ. P. 56(c).  The Court will therefore presume without deciding that Miner qualifies as an employee under 29 U.S.C. § 630(f).

### B.    Whether Plaintiff Can Rebut Defendant's Proffered Reasons for its Action

Miner is not in possession of direct evidence that Montgomery County discriminated against him based on age.  Accordingly, the Court employs the familiar *McDonnell Douglas* burden-shifting analysis to evaluate his claim.  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).   Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of age discrimination by showing that he was (1) a member of the protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) replaced by someone outside of the protected class.  *Id.*  Montgomery County concedes, for purposes of its motion,

---

[1]  Regardless of Miner's testimony in that regard, the evidence indicates that the Mayor recommends the position to the Montgomery County Commission, who must ratify or approve the appointment.

that there is at least a disputed issue of fact as to each element of Miner's *prima facie* case.

Once the plaintiff has established the elements of his *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). "If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Id.* The defendant does not have the burden of persuading the trier of fact as to the legitimacy of its reasons by a preponderance of the evidence; rather, the defendant is simply required to articulate a valid rationale for its decision. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant meets this burden, the presumption of discrimination created by the *prima facie* case falls away and the plaintiff then needs to show that the defendant's legitimate nondiscriminatory reason was a pretext for discrimination. Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706–07 (6th Cir. 2006) (citations and internal quotation marks omitted).

A plaintiff can establish pretext by showing that the defendant's proffered reason for the adverse action "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). With respect to these three avenues, the Sixth Circuit has explained:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for . . . the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In

> other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup.

*Manzer*, 29 F.3d at 1083–84 (citations, footnote, and internal quotation marks omitted). Finally, "[i]f a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citations omitted). In that event, summary judgment obviously would not be appropriate.

In the case at bar, the defendant has articulated three reasons behind Mayor Carolyn Bowers' decision to terminate Miner's employment: his purportedly uneven enforcement of building codes, based on complaints received by the Mayor; his arrogance to citizens who came to the Building Commission's office, also based on complaints from builders; and general overall inefficiency. Miner attempts to establish pretext as to the first reason by arguing that there was a "posse" of builders who sought to get rid of him because of his practice of requiring strict compliance with the building code and that, while there is no dispute that several builders did in fact contact Bowers to complain about Miners, there is no evidence that their complaints had any basis in fact. Further, according to Bowers' testimony, it would have been inappropriate to terminate Miner (or any other department head) simply because he was enforcing the rules and citizens did not like that rules were being enforced. Miner also argues that Bowers testified that she instructed Ed Davis to investigate the validity of the complaints, but then fired Miner despite the fact that no such investigation actually occurred. Miners argues that because no investigation actually incurred, there is no evidence that the complaints were legitimate, and Bowers' credibility as to the reasons for her decision is therefore called into question generally. As the Sixth Circuit has acknowledged, the issue is not whether the reports about Miner were true; the issue is whether the "employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998). *See also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008) (applying the "honest belief" rule).

Thus, the problem with the plaintiff's position is that there is no dispute that several builders actually did complain about how Miner was running his office. Regardless of whether Miner himself believed these builders were part of a posse who sought to oust him, Bowers was within her discretion to rely on those reports as a basis for terminating Miner's employment. The record suggests a lack of

communication between Davis and Bowers but does not actually implicate Bowers' credibility with respect to whether she received complaints and basically believed the reports she was hearing.

Miner also disputes Bowers' purported reliance on reports that he was arrogant, pointing out that she did nothing to verify the two reports she had received in that regard, one of which was from an anonymous phone call.  The other basis for Bowers' belief in his arrogance arose from the interaction between Bowers and Miner that occurred on September 5, 2006.  Miner asserts that there was "nothing objectively inappropriate about Mr. Miner's conduct in the meeting and even Mr. Davis concluded that Mr. Miner acted in appropriate fashion in the meeting."  (Doc. No. 26, at 15.)  While it is true that Davis himself did not find Miner's behavior inappropriate, he also testified that he observed that Mayor Bowers obviously did and was personally offended by Miner's behavior.  Davis himself tried, unsuccessfully, to iron out what he believed to be a matter of miscommunication and misunderstanding.  The fact remains that Mayor Bowers herself clearly perceived Miner to have been arrogant and disrespectful.

Similarly, regardless of whether Miner's office actually was run inefficiently, Bowers stated several reasons in support of her perception that it was not being run as efficiently as it could have been.  Again, the question is not whether Miner's office was inefficient in reality but whether Bowers held an honest belief that it was.  Bowers had an articulable basis for her belief; moreover, that belief, in conjunction with the complaints received and her own experience (even if misjudged) of Miner's arrogance, was sufficient to justify her decision to terminate his employment.

In sum, while there may be a dispute about the validity of the reports Bowers received about Miners' performance and the running of his office, there is no dispute that Mayor Bowers did in fact receive a number of unfavorable reports about Miners and ultimately chose to act upon them.  Even if the Mayor's decision was ill-advised or insufficiently researched, for purposes of Miner's ADEA claim, the complaints coupled with the Mayors' own observations were sufficient to support the adverse action.  Miner has not succeeded in creating an issue of fact as to whether the Mayor actually believed the reports or had a legitimate basis for believing the reports, nor has he shown he was treated disparately from any similarly situated employee, or that there is any other circumstantial evidence in the record sufficient to give rise to an inference that the reasons given for his termination were pretextual.

**C.      Miner's THRA Claim Is Also Subject to Summary Judgment.**

The same standards applicable to Miner's ADEA claim also govern his THRA claim for age discrimination.  *See* Tenn. Code Ann. § 4-21-101(a) ("It is the purpose and intent of the general assembly by this chapter to . . . [p]rovide for execution within Tennessee of the policies embodied in . . . the Age Discrimination in Employment Act of 1967, as amended."); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 630 (6th Cir. 2006) (applying same analysis to ADEA and THRA claims).  Montgomery County is therefore entitled to summary judgment as to that claim on the same grounds that warrant dismissal of his ADEA claim.

**IV.      CONCLUSION**

For the reasons set forth herein, the Court finds that there are no genuine issues of material fact and defendant Montgomery County is entitled to judgment in its favor as a matter of law.  The motion for summary judgment will therefore be granted.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge